No. 24-5747

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

FEDERAL TRADE COMMISSION,
*Plaintiff-Appellant,*

v.

BENJAMIN E. HOSKINS, individually and as officer of Defendants
Dream Financial; Logic Solutions, LLC; Oxford Debt Holdings, LLC Sell
It Vizions, LLC; and Global Finance Group, LLC, and LEANNE
RODGERS F/K/A Leanne Hoskins,
*Defendants -Appellees.*

On Appeal from the United States District Court
for the District of Nevada
No. 2:11-cv-0283-JCM-GWF
Hon. James C. Mahan

## REPLY BRIEF OF THE FEDERAL TRADE COMMISSION

Of Counsel:
CRYSTAL OSTRUM
   *Attorney*

FEDERAL TRADE COMMISSION
Washington, D.C. 20580

LUCAS CROSLOW
   *General Counsel*

H. Thomas Byron III
   *Deputy General Counsel*

MATTHEW B. WEPRIN
MATTHEW M. HOFFMAN
   *Attorneys*

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
(202) 326-3097
mhoffman@ftc.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................ii

INTRODUCTION AND SUMMARY .........................................................1

ARGUMENT ..............................................................................................3

I.  The FCDPA Preempts the Nevada Statute of
    Limitations. ....................................................................................3

    A.  The Judgment Is a "Debt" Because It Is Owed to a
    United States Agency. ..............................................................4

    B.  *AMG* Does Not Affect This Case. ...........................................10

    C.  *Erie* Has Nothing To Do With This Case. ...............................14

II.  The District Court Erred In Quashing the Writ. ...........................19

CONCLUSION ........................................................................................22

# TABLE OF AUTHORITIES

## CASES

*AMG Capital Mgmt., LLC v. FTC,*
 593 U.S. 67 (2021) ................................................................. 10

*Biden v. Nebraska,*
 143 S. Ct. 2355 (2023) ........................................................... 18

*Boyle v. United Techs. Corp.,*
 487 U.S. 500 (1988) ............................................................... 15

*Budinich v. Becton Dickinson & Co.,*
 486 U.S. 196 (1988) ............................................................... 14

*Cal. Publ. Util. Comm'n v. FERC,*
 29 F.4th 454 (9th Cir. 2022) ................................................. 16

*Callie v. Bowling,*
 160 P.3d 878 (Nev. 2007) ...................................................... 20

*Clearfield Tr. Co. v. United States,*
 318 U.S. 363 (1943) ............................................................... 15

*Erie Railroad Co. v. Tompkins,*
 304 U.S. 64 (1938) ...................................................... 2, 13, 14

*FTC v. Com. Planet, Inc.,*
 815 F.3d 593 (9th Cir. 2016) ................................................. 10

*FTC v. Credit Bureau Ctr., LLC,*
 81 F.4th 710 (7th Cir. 2023) ................................................. 11

*FTC v. Hewitt,*
 68 F.4th 461 (9th Cir. 2023) ........................................... 10, 12

*FTC v. Nat'l Bus. Consultants, Inc.,*
 376 F.3d 317 (5th Cir. 2004) ...................................... 6, 11, 12

*FTC v. Ross,*
 74 F.4th 186 (4th Cir. 2023) ................................................. 10

*Guaranty Tr. Co. v. York,*
 326 U.S. 99 (1945) ................................................................. 16

*In re Mortg. Elec. Sys., Inc.,*
 754 F.3d 772 (9th Cir. 2014) ................................................. 13

*Lima v. United States Dep't of Educ.*,
947 F.3d 1122 (9th Cir. 2020) ........................................................ 7

*Maternally Yours v. Your Maternity Shop*,
234 F.2d 538 (2d Cir. 1956) ........................................................ 16

*Miller v. Gammie*,
335 F.3d 889 (9th Cir. 2003) ........................................................ 4

*Reynoldsville Casket Co. v. Hyde*,
514 U.S. 749 (1995) ........................................................ 10

*Rotkiske v. Klem*,
589 U.S. 8 (2019) ........................................................ 7

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010) ........................................................ 17

*Sherman v. United States Parole Comm'n*,
502 F.3d 869 (9th Cir. 2007) ........................................................ 17

*Sobranes Recovery Pool I, LLC v. Todd & Hughes Constr. Corp.*,
509 F.3d 216 (5th Cir. 2007) ........................................................ 8, 9

*Sumrall v. LeSEA, Inc.*,
104 F.4th 622 (7th Cir. 2024) ........................................................ 16

*United States v. Bedi*,
15 F.4th 222 (2d Cir. 2021) ........................................................ 7, 8

*United States v. Giannelli*,
543 F.3d 1178 (9th Cir. 2008) ........................................................ 3, 15, 16

*United States v. Oakland Cannabis Buyers' Coop.*,
532 U.S. 483 (2001) ........................................................ 17

*Will v. Mich. Dep't of State Police*,
491 U.S. 58 (1989) ........................................................ 18

**STATUTES**

15 U.S.C. § 53(b) ........................................................ 10

15 U.S.C. § 57b ........................................................ 11

Fair Debt Collection Practices Act,
15 U.S.C. § 1692 *et seq.* ........................................................ 7

15 U.S.C. § 1692a(5) ........................................................ 7

15 U.S.C. § 1692a(6) ............................................................7

28 U.S.C. § 1291 ..................................................................1

Federal Debt Collection Procedure Act,
28 U.S.C. § 3001 *et seq.* .....................................................7

28 U.S.C. § 3001 ..................................................................4

28 U.S.C. § 3002(12) .........................................................20

28 U.S.C. § 3002(15) ...........................................................4

28 U.S.C. § 3002(3) ..............................................................7

28 U.S.C. § 3002(3)(B) ................................................ 4, 9, 17

28 U.S.C. § 3003(d) ............................................................14

28 U.S.C. § 3010(a) ............................................................18

31 U.S.C. § 3302(b) ............................................................12

Nev. Rev. Stat. § 123.050 ..................................................19

## RULES

Fed. R. App. P. 40(b)(2) ........................................................4

Fed. R. App. P. 40(g) .............................................................4

Fed. R. Civ. P. 69(a)(1) ........................................................16

## CONSTITUTIONAL PROVISIONS

U.S. Const. art. VI ..............................................................14

## OTHER AUTHORITIES

17A *Moore's Federal Practice* § 124.42 (Mar. 2025
update) ................................................................................15

19 Charles Alan Wright & Arthur R. Miller,
*Federal Practice & Procedure* § 4520 (3d ed.
Nov. 2024 update) ..............................................................14

## INTRODUCTION AND SUMMARY

The district court here should not have prevented the FTC from enforcing its judgment against Leanne Rodgers for the money she received from the massive Ivy Capital scam. Nor should it have quashed the FTC's writ of execution on the Corona Vista property that Rodgers owns (through a trust and chain of shell entities) and lives in with her husband and co-defendant, Benjamin Hoskins.[1] The decisions below should be reversed because they ignore the plain language of the Federal Debt Collection Procedure Act ("FDCPA") and controlling precedent from this Court interpreting that statute. Moreover, the record shows that Rodgers has engaged in brazen violations of the law: violating court orders, misleading the district court and the government, transferring and selling frozen assets, and using the sales proceeds to secretly purchase a million-dollar home in a transaction designed to hide her and her

---

[1] Hoskins, who orchestrated the scam, chose not to appear in district court or in this Court even though he also has an interest in the Corona Vista property. The suggestion that the Court lacks jurisdiction over Hoskins (Br. 1) is incorrect because he was a proper defendant below and remains bound by the judgment. This Court's appellate jurisdiction attaches to the final decisions of the district court, not to particular parties. *See* 28 U.S.C. § 1291.

co-defendant's ownership interests. The district court should not have fallen prey to the continuing efforts of defendants to avoid their legal obligations.

The Nevada statute of limitations does not preclude the FTC from enforcing its judgment against Rodgers and Hoskins. This Court has squarely held that federal law—the FDCPA—preempts state statutes of limitations. The FTC's judgment is a "debt" within the meaning of the FDCPA because it is an amount owing to an agency of the United States. Rodgers principally relies on a case involving a completely different statute (the Fair Debt Collection Practices Act rather than the Federal Debt Collection Procedure Act) and her other cases do not support her argument either. Rodgers also invokes the hoary precedent of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), but that case has nothing to do with the statutory authority of the federal government to collect money it is owed. The canon of constitutional avoidance has no application where, as here, the language of a statute is plain.

Nevada law offers no basis to quash the FTC's writ of execution. State law is relevant only to determine what rights

Rodgers has in the Corona Vista property, and there is no dispute that Rodgers is a trustee of the trust that owns the property through a series of shell entities. The FDCPA—not state law—determines whether those property rights are subject to execution and specifies the procedure for execution. The district court erred by not applying the FDCPA.

## ARGUMENT

### I. THE FCDPA PREEMPTS THE NEVADA STATUTE OF LIMITATIONS.

This Court has clearly and unequivocally held that when the government seeks to enforce a judgment in its favor, the FDCPA preempts application of state statutes of limitations. That is because "[t]he FDCPA provides no time limit for the collection of debts by writ of execution." *United States v. Giannelli*, 543 F.3d 1178, 1183 (9th Cir. 2008). The plain language of the statute admits no less: "This chapter shall preempt State law to the extent such law is inconsistent with a provision of this chapter." 28 U.S.C. § 3003(d). Nevada's six-year statute of limitations for enforcement of judgments is inconsistent with the FDCPA and is preempted just as the California statute of limitations in *Giannelli* was.

3

Rodgers acknowledges *Giannelli* (Br. 20-21) but argues that its holding should not apply here for two reasons.[2] First, Rodgers argues that the judgment against her is not a "debt" within the meaning of the FDCPA. Second, she argues that application of the FDCPA's plain would somehow conflict with the *Erie* doctrine. Both arguments are wrong.

### A. The Judgment Is a "Debt" Because It Is Owed to a United States Agency.

**1.** The FDCPA provides the exclusive civil procedures for the United States and its agencies to recover judgment on a "debt." 28 U.S.C. § 3001.[3] A "debt" includes any "amount that is owing to the United States" except for amounts owed under the terms of a contract originally entered into by persons other than the United States. *Id.* § 3002(3)(B). Under the plain language of the statute,

---

[2] Rodgers suggests in a footnote that the panel should "overrule *Gianelli* or refer the issue to the Ninth Circuit sitting *en banc*." Br. 21 n.1. Of course, "a three-judge panel may not overrule a prior decision of the court" unless it is clearly irreconcilable with later authority from a higher court. *Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc). And Rodgers has not shown that this case meets the strict standards for *en banc* review. *See* Fed. R. App. P. 40(b)(2), (g).

[3] "United States" includes "an agency, department, commission, board, or other entity of the United States." 28 U.S.C. § 3002(15).

the monetary judgment against Rodgers is a "debt" subject to the FDCPA because it requires Rodgers to pay money to the FTC. *See* 2-ER-284 ("IT IS FURTHER ORDERED that judgment is hereby entered *in favor of the commission* and against relief defendant Leanne Hoskins in the amount of one million, one hundred twenty-eight thousand, seven hundred ninety-five dollars and seventy-eight cents ($1,128,795.78), plus prejudgment interest in the amount of six thousand, eight hundred thirty dollars and eighty-nine cents ($6,830.89), as equitable monetary relief for ill-gotten gains.") (emphasis added).

Rodgers does not appear to dispute that the 2013 judgment is a "debt" on its face, but she urges this Court to ask what the government will do with the money it collects on its debt. Nothing in the judgment requires payments to any party other than the FTC. But Rodgers argues (Br. 17) that the Court should look beyond the formal terms of the judgment on the ground that the FTC will exercise its statutory authority to provide redress to injured consumers. Nothing in the statute or the case law supports that atextual argument, which is contrary to the statutory

5

definition of "debt." The FDCPA includes no exceptions based on the later disbursement of funds obtained by the government in satisfaction of its debts, whether they will be used to pay bondholders or social security recipients or consumers. What matters is whether the money must be paid to the government or to someone else.

The Fifth Circuit has rejected the precise argument that Rodgers is now making. *FTC v. Nat'l Bus. Consultants, Inc.,* 376 F.3d 317, 319-20 (5th Cir. 2004). The court held that an "unpaid judgment owed to the FTC constitutes a debt owing to the United States" even where it "represents relief and damages awarded for consumer redress that the FTC must pass on to" consumers. *Id.* It explained that where "[t]he terms of the judgment render [defendants] jointly and severally liable to the FTC, not to private individuals…the United States, not any individual or group of individuals, is the formal owner of the judgment," and that "nothing in the statutory text [of the FDCPA] requires that the government be the exclusive beneficiary of the judgment." *Id.* at 320. That conclusion is based on a straightforward reading of the

FDCPA's plain language, and this Court should reach the same result. Since the FTC is the formal owner, the judgment is a "debt" under the FDCPA.

**2.** Rodgers relies principally on a case involving an entirely different statute, which has no bearing here. Br. 18-20 (citing *Lima v. United States Dep't of Educ.*, 947 F.3d 1122 (9th Cir. 2020)). *Lima* interpreted a provision in the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, which "authorizes private civil actions against debt collectors who engage in certain prohibited practices." 947 F.3d at 1125 (quoting *Rotkiske v. Klem*, 589 U.S. 8, 9 (2019)). This case, by contrast, involves the Federal Debt Collection Procedure Act, 28 U.S.C. § 3001 *et seq.* Although the two statutes bear the same initials, they are completely different. The statutory definition of "debt" at issue in *Lima* is nothing like the FDCPA definition at issue here. *Compare* 15 U.S.C. § 1692a(5) *with* 28 U.S.C. § 3002(3).[4]

---

[4] Under the Fair Debt Collection Practices Act, a "debt" refers to consumer debt for personal, family or household purposes, and a "debt collector" is a person who regularly collects or attempts to collect debts owed or due to another, subject to certain exceptions.

Rodgers also misreads *United States v. Bedi*, 15 F.4th 222 (2d Cir. 2021). Br. 19-20. *Bedi* involves the right FDCPA but completely different facts and an irrelevant holding. An administrative law judge in the Department of Labor entered an order "requiring a private employer to remit back pay to its former employee." *Id.* at 223. Because that order required payment to the employee herself, not the federal government, the Second Circuit held that the order was not a "debt" within the meaning of the FDCPA. *See id.* at 228 ("[T]he Administrative Order requires Bedi and Datalink to pay 'Ingvarsdóttir,' not 'the United States.'"). By contrast, in this case, as in *National Business Consultants,* the underlying judgment against Rodgers and others is payable to the FTC. The Second Circuit said nothing about imposing a test (found

_____

15 U.S.C. § 1692a(5), (6). *Lima* involved a state lending agency seeking to recover on a judgment against a borrower who defaulted on federally guaranteed student loans. 947 F.3d at 1123-24. The Court held that the lending agency fell within the general definition of "debt collector" because it sought to collect not for its own account but on a debt owed to another: the debt was "owed, or asserted to be owed, to the United States," rather than the state lending agency, *id.* at 1125-26. *Lima* did not address whether the judgment at issue in that case would have been a "debt" under the Federal Debt Collection Procedure Act.

8

nowhere in the statute) based on whether a "debt's *destination* is to a government entity." Br. 19.

Nor does *Sobranes Recovery Pool I, LLC v. Todd & Hughes Construction Corp.*, 509 F.3d 216 (5th Cir. 2007), undermine the Fifth Circuit's conclusion in *National Business Consultants* that a judgment payable to the FTC is a "debt" under the FDCPA. Br. 22. To the contrary, *Sobranes* explicitly reaffirmed *National Business Consultants*. 509 F.3d at 226. *Sobranes* involved the statutory exception to the definition of "debt" for amounts owed to the United States under contracts originally entered into by other parties, *i.e.*, contracts between private parties that are transferred or assigned to the government after (sometimes long after) they were executed. *See* 28 U.S.C. 3002(3)(B). The court held that a note executed by a private party in favor of a savings and loan association ("S&L"), which was later transferred to the FDIC after the S&L and successor entities failed, was within the exception and therefore not a "debt" within the FDCPA definition. *Sobranes*, 509 F.3d at 217-18, 223-27. The court explained that "[t]he critical distinction between this case and *National Business Consultants* is that here

the FDIC was seeking only to recover under the terms of a contract originally entered into by private parties, whereas in *National Business Consultants* the FTC was vindicating its independent statutory authority to enforce the [FTC Act]." *Id.* at 226. In this case, as in *National Business Consultants*, "the judgment the FTC recovered was not 'owing under the terms of a contract' between private parties." *Id. Sobranes* thus does not cast any doubt on *National Business Consultants*.

### B. *AMG* Does Not Affect This Case.

Rodgers is also wrong to suggest (Br. 22-23) that *AMG Capital Management, LLC v. FTC*, 593 U.S. 67 (2021), undermines *National Business Consultants* or its construction of the statutory term "debt." *AMG* did not involve the FDCPA and thus does not cast any doubt on the Fifth Circuit's application of the FDCPA's plain language.

In *AMG*, the Supreme Court held that district courts may not award monetary relief to redress consumer injury under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b). *AMG*, 593 U.S. at 82. Prior to *AMG*, this Court (and many other circuits) held that Section

10

13(b) authorized a broad range of monetary remedies, including restitution to consumers. *See, e.g.*, *FTC v. Com. Planet, Inc.*, 815 F.3d 593, 598-99 (9th Cir. 2016). Although such relief is no longer available in new cases, this Court and others have recognized that pre-*AMG* judgments for monetary relief under Section 13(b) remain valid. *See, e.g.*, *FTC v. Hewitt*, 68 F.4th 461, 464 (9th Cir. 2023) (affirming denial of Rule 60(b) motion to set aside monetary judgment); *FTC v. Ross,* 74 F.4th 186, 195-96 (4th Cir. 2023) (same); *see generally Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758 (1995) ("New legal principles, even when applied retroactively, do not apply to cases already closed."). Furthermore, district courts may still award money to be paid to the FTC for consumer redress under Section 19 of the FTC Act, 15 U.S.C. § 57b. *See, e.g.*, *FTC v. Credit Bureau Ctr., LLC*, 81 F.4th 710, 714 (7th Cir. 2023).

In this case, the judgment against Rodgers was entered not only under Section 13(b) but also under Section 19, 2-ER-277-278, and it became final (*i.e.*, all direct appeals were exhausted) long before *AMG* was decided. In 2021, Hoskins and Rodgers moved

under Rule 60(b) to vacate the monetary relief portion of the judgment based upon *AMG,* but the district court denied the motion, and Hoskins and Rodgers did not appeal that decision. ECF 449, 460. Rodgers cannot now collaterally attack the underlying judgment by invoking *AMG* in this post-judgment enforcement proceeding.

Rodgers misreads *National Business Consultants* when she suggests that the Fifth Circuit "wrongly allow[ed] the FTC to keep [restitution or disgorgement] awards for itself." Br. 23. The judgment in *National Business Consultants*, like the judgment in this case, was based on both Section 13(b) and Section 19. *See* 376 F.3d at 318-19. Although most of the judgment was for consumer redress, it also awarded the FTC attorneys' fees and costs, which were for the benefit of the government, not consumers. *Id*. at 319 & n.2. [5] But the Fifth Circuit's holding did not turn on that fact. As discussed above, the determinative factor was that the FTC was

---

[5] Where the FTC recovers money for the benefit of the United States, as opposed to consumers, it cannot "keep those awards for itself." Under the Miscellaneous Receipts Act, 31 U.S.C. § 3302(b), it must deposit those funds in the Treasury.

"the formal owner of the entire debt." *Id.* Nothing in *AMG* casts doubt on this reasoning.

Rodgers cryptically suggests that in light of *AMG*, the judgment in is not a debt because it must be paid to consumers, not to the government. Br. 17-18. But as explained above, it does not matter for the purposes of the FDCPA whether any funds recovered will ultimately be paid to consumers or the Treasury.[6] What matters is that the entire judgment is payable to the FTC, and thus is an amount owing to the United States.

---

[6] Prior to *AMG*, district court judgments awarding consumer redress under Section 13(b) commonly ordered the FTC to deposit in the Treasury any funds that it was not able to distribute to consumers. *See, e.g.*, *Hewitt*, 64 F.4th at 464. Such judgments remain valid. In this case, the judgment, on its face, does not address whether the FTC must deposit money with the Treasury if it is unable to provide consumer redress. As noted in our opening brief (at 9), the FTC fully intends to use any funds it recovers from Hoskins or Rodgers to provide redress to the victims of Hoskins's scam. Whether the judgment permits disgorgement to the Treasury is a question for the district court, but it is irrelevant to the FDCPA analysis and, in any event, will not arise until and unless the FTC actually recovers funds from Hoskins and Rodgers and subsequently determines that redress is impracticable.

## C. *Erie* Has Nothing To Do With This Case.

Rodgers raises a new argument for the first time in this Court, suggesting (Br. 23) that under the *Erie* doctrine, the FDCPA should not be read to preempt the Nevada statute of limitations. This Court strongly disfavors arguments that were waived or forfeited before the district court. *See*, *e.g.*, *In re Mortg. Elec. Sys., Inc.*, 754 F.3d 772, 780 (9th Cir. 2014) ("Generally, arguments not raised in the district court will not be considered for the first time on appeal."). But this argument would not be worthy of this Court's attention even if Rodgers had raised it below. Rodgers misunderstands the scope and holding of *Erie*. *Erie* does not apply here because (1) Congress has specifically preempted the use of state law procedures for the collection of debts owed to the United States and (2) this case does not arise under state law in any event.

*Erie* held that when federal courts adjudicate state law claims "[t]here is no federal general common law." 304 U.S. at 78. Accordingly, "[e]xcept in matters governed by the Federal Constitution or by Acts of Congress," courts adjudicating state law claims must apply the law as determined by the state's highest

14

court or its legislature. *Id*. But state law "does not control the resolution of issues governed by federal statute." *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 198 (1988).[7] That is because the Constitution's Supremacy Clause provides that federal statutes are "the supreme Law of the Land" and are binding on judges, "any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI.

The FDCPA is of course an Act of Congress, and it preempts contrary state law by its terms. 28 U.S.C. § 3003(d). Thus, as this Court held in *Giannelli*, the FDCPA preempts state statutes of limitations on enforcement of judgments. Nothing in the Constitution prohibits Congress from preempting state law to ensure the protection of the government's own rights, including the collection of debts owed to the United States and its agencies. Rodgers cites no authority to suggest that the FDCPA's preemption

---

[7] *See also* 19 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 4520 (3d ed. Nov. 2024 update) ("[W]hen there is a valid and pertinent federal principle of law that applies to a situation, whether based on the Constitution, a federal statute, federal common law, an applicable federal procedural rule, or a governmental regulation, then the Supremacy Clause requires that it be utilized, notwithstanding a state rule to the contrary.").

provision is invalid or has ever been questioned or struck down as incompatible with federalism principles. To the contrary, "Federal law, including federal common law, applies in a suit that involves a proprietary interest of the United States." 17A *Moore's Federal Practice* § 124.42 (Mar. 2025 update); *see, e.g.*, *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504-08 (1988) (state laws may be displaced based on matters of "unique federal concern"); *Clearfield Trust Co. v. United States*, 318 U.S. 363, 366-67 (1943) (rights and duties of the United States on commercial paper it issues must be governed by federal law). Here, Congress enacted the FDCPA precisely for the purpose of providing a uniform statutory scheme to protect the proprietary interests of the United States. *See Giannelli*, 543 F.3d at 1183 (noting that "the FDCPA's stated purpose" was to create "uniform federal procedures for the collection of debts to the federal government.").

*Erie* is also inapplicable because the FTC's claims in this case arise under federal law—the FTC Act—not state law. Although *Erie* applies to state law claims regardless of the basis for federal jurisdiction, it "is inapplicable to claims or issues created and

16

governed by federal law." *Cal. Publ. Util. Comm'n v. FERC*, 29 F.4th 454, 463 (9th Cir. 2022); *accord Maternally Yours v. Your Maternity Shop*, 234 F.2d 538, 540 n.1 (2d Cir. 1956).[8] To be sure, enforcement of judgments in many federal question cases—those that do not result in a judgment payable to the United States or its agencies—may be governed by state law, but that is because of the Federal Rules of Civil Procedure, not the *Erie* doctrine. Rule 69 provides that execution on a money judgment must "accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Fed. R. Civ. P. 69(a)(1). As the Court explained in *Giannelli*, the FDCPA "is such a statute," so it controls rather than state procedure. 543 F.3d at 1182. For that reason, *Guaranty Trust Co. v. York*, 326 U.S. 99 (1945), offers no support to Rodgers. *Guaranty Trust* held that under *Erie*, federal courts adjudicating state law claims must apply the state statute of

---

[8] Although Rodgers is correct that *Erie* may apply in federal question as well as diversity jurisdiction cases, the doctrine applies only to state law claims, not federal ones. *See, e.g., Sumrall v. LeSEA, Inc.*, 104 F.4th 622, 629 (7th Cir. 2024) (applying *Erie* to state law claims over which the district court exercised supplemental jurisdiction).

limitations. *Id.* at 110. But that rule does not apply here because this is not a state law claim, and the question is not whether the underlying claim is time-barred but whether federal or state law governs execution on the judgment.

Finally, Rodgers invokes the canon of constitutional avoidance (Br. 23). For the reasons discussed above, there is no constitutional issue to avoid here, but in any case, the avoidance canon "has no application in the absence of statutory ambiguity." *United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 494 (2001); *accord Sherman v. United States Parole Comm'n*, 502 F.3d 869, 882 (9th Cir. 2007) ("The canon of constitutional avoidance has no application when a statute's language is unambiguous and Congress' intent is clear."). The language of the FDCPA here is clear and unambiguous. A "debt" is an amount owing to the United States or one of its agencies, including the FTC. 28 U.S.C. § 3002(3)(B). Constitutional avoidance is not a

license for a party or a court to rewrite the plain language of the statute that Congress enacted.[9]

## II.  THE DISTRICT COURT ERRED IN QUASHING THE WRIT.

For the reasons discussed above, Rodgers is wrong that the FDCPA does not apply here. Because this case is governed by the FDCPA, Nevada law provides no basis to quash the writ of execution. Rodgers attempts to import a state-law issue by

---

[9] Rodgers cites (or miscites) several inapplicable cases. *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.,* 559 U.S. 393 (2010), does not address constitutional avoidance. It applies the well-settled rule that where a Federal Rule of Civil Procedure is involved, courts "do not wade into *Erie*'s murky waters unless the federal rule is inapplicable or invalid," which is not the case here. *Id.* at 398. Rodgers also cites Justice Barrett's concurring opinion in *Biden v. Nebraska*, 143 S. Ct. 2355 (2023), for the proposition that "if Congress intends to alter the usual constitutional balance between the States and the Federal Government, it must make its intention to do so unmistakably clear in the language of the statute." Br. 24, 28. That is a correct but irrelevant statement of law, *see, e.g., Will v. Mich. Dep't of State Police,* 491 U.S. 58, 65 (1989), although it appears nowhere in Justice Barrett's *Nebraska* opinion. The principle is inapplicable here because (1) the FDCPA applies solely to debts owed to the United States and thus does not alter the constitutional balance between the states and the federal government, and (2) Congress made its intention to displace state law crystal clear by including an express preemption provision in the FDCPA.

invoking one section of the FDCPA, 28 U.S.C. § 3010(a), but she misconstrues both that section and the relevant Nevada law.

Section 3010(a) protects the interests of innocent co-owners. The statute provides that FDCPA remedies "may be enforced against property which is co-owned by a debtor and any other person only to the extent allowed by the law of the State where the property is located." Under this provision, if a judgment debtor and a third party share ownership interests in a single property, to the extent that co-owned property is protected from enforcement under state law, federal law will also protect the innocent third party's interests. For example, in Nevada, a community property state, a spouse's share of community property is not liable for "the debts of the other spouse contracted before the marriage." Nev. Rev. Stat. § 123.050. Accordingly, under § 3010(a), the government could not levy on Rodgers's share of community property to satisfy a debt incurred by Hoskins before their marriage.

But that provision has nothing to do with this case. The writ of execution here does not infringe the property interests of any innocent co-owners. The writ seeks only the interests that Rodgers

20

and Hoskins have in the Corona Vista property—the residence of both defendants, both of whom who are judgment debtors of the FTC and trustees and beneficiaries of the Hambil Trust.[10] The FDCPA authorizes execution against any property in which the judgment debtors—Rodgers and Hoskins—have a substantial nonexempt interest. And the statute defines "property" to include "any present or future interest, whether legal or equitable, in real, personal (including choses in action), or mixed property, tangible or intangible, vested or contingent, wherever located and however held," and specifically includes "property held in trust (including spendthrift and pension trusts)." 28 U.S.C. § 3002(12). Thus, it is no answer to point to a trust that owns the Corona Vista property. The writ of execution properly sought to enforce the 2013 judgment against any interest that Rodgers and Hoskins had in that property, even if held in trust.

---

[10] The Hambil Trust does not directly own the Corona Vista property. The property is owned by a single legal entity, Monte Bello, LLC. 2-ER-95-98. Monte Bello, in turn, is owned by Resolute 21, LLC, which in turn is owned by the Hambil Trust. 2-ER-95-99.

21

Rodgers (Br. 30), like the district court, inaptly cites *Callie v. Bowling*, 160 P.3d 878 (Nev. 2007). But the writ of execution here does not require any inquiry into an alter ego theory under Nevada law. The FTC need not amend its judgment against Rodgers and Hoskins to include any other entity. The FDCPA authorizes the government to enforce the judgment against Rodgers and Hoskins by executing on real property in which they have a substantial non-exempt interest.

## CONCLUSION

This Court should reverse the orders of the district court granting Rodgers relief from judgment and quashing the writ of execution.

Respectfully submitted,

LUCAS CROSLOW
    *General Counsel*

April 4, 2025

H. THOMAS BYRON III
    *Deputy General Counsel*

/s/ Matthew M. Hoffman
MATTHEW B. WEPRIN
MATTHEW M. HOFFMAN
    *Attorney*

FEDERAL TRADE COMMISSION
600 Pennsylvania Ave., N.W.
Washington, D.C. 20580

Of Counsel:
CRYSTAL OSTRUM
    *Attorney*

FEDERAL TRADE COMMISSION
Washington, D.C. 20580

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 24-5747

I am the attorney or self-represented party.

**This brief contains** 4,460 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

⦿ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [            ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Matthew M. Hoffman **Date** 04/04/2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** *Rev. 12/01/22*